(83 South. 902)

No. 22353.

NILSON et al. v. BRINKERHOFF et al.

(Dec. 1, 1919. Rehearing Denied March 1, 1920.)

*(Syllabus by Editorial Staff.)*

1. REAL ACTIONS �köö7(2)—IN PETITORY ACTION PLAINTIFFS MUST STAND ON OWN TITLE.

Plaintiffs in a petitory action must stand on their own title.

2. VENDOR AND · PURCHASER ⊙⟶228(1)— RIGHTS OF SUBSEQUENT PURCHASERS FROM HEIRS OF MORTGAGOR SUPERIOR TO THOSE CLAIMING UNDER A FORECLOSURE.

Where a widow's heirs sold to plaintiffs, who in buying were guilty of no fraud or bad faith toward defendant, claiming as purchaser from the widow's mortgagee, who had foreclosed by proceeding which did not describe and include the particular land included, nevertheless, in the widow's mortgage, plaintiff's recorded legal title is good against defendant, though plaintiffs may have known that defendant claimed the land not included in the foreclosure proceedings.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by M. K. Nilson and another against Z. K. Brinkerhoff and another. From a judgment for plaintiffs defendant Brinkerhoff appeals. Affirmed.

J. D. Wilkinson, Foster, Looney & Wilkinson and Hampden Story, all of Shreveport, for appellant.

Pegues & Burgess and Liverman & Pollock, all of Mansfield, and R. A. Fraser, of Many, for appellees.

DAWKINS, J. This is a petitory action by M. K. Nilson and S. L. Carroll against Z. K. Brinkerhoff and the Producers' Oil Company, involving the ownership of the west half of northwest quarter of section 31, township 13 north, range 10 west, containing 80 acres of land, and situated in the parish of Red River. Plaintiffs alleged a chain of title emanating from the heirs of one Sarah A. Greening. They further alleged that the Producers' Oil Company under a pretended lease from Brinkerhoff were trespassing upon said property by erecting derricks and other works thereon for the boring for oil and gas, and pray that they be recognized as owners, entitled to possession of the property; that the said pretended lease be erased from the records of Red River parish; and that their right to sue for

the oil and gas which may be extracted from the premises, as well as for all other damages accruing during the pendency of the suit, be reserved.

Defendant Brinkerhoff answered denying plaintiffs' ownership, and alleging that they had attempted in bad faith and in collusion with other persons to place the record title in their names for the purposes of this suit; that the plaintiffs' alleged vendors had no title to convey and that none had been acquired. Defendant further averred that he had acquired title from the widow and heirs of S. Russ more than eight years prior to the filing of this suit; that Russ had acquired the property by purchase at a foreclosure sale under an act of mortgage held by said Russ thereon, executed by Mrs. Sarah A. Greening and the heirs of J. J. Greening; that while the said Russ had obtained a judgment recognizing his said mortgage upon all of the property described therein, which included the 80 acres now in contest, and the sheriff had seized and taken into his possession all of said property, known as the "Last Chance" or "Greening plantation," and had advertised and sold it at said sale, through "error, oversight, and omission" he had "neglected to describe therein the property mentioned in plaintiffs' petition, but that it was the intention of the said sheriff, and in truth and in fact he did sell and convey unto the said Russ all of said property, although, as above stated, by error, oversight, and omission, failed to specifically describe the property mentioned in plaintiffs' petition." Further, that certain of the Greening heirs had granted, quitclaimed, and renounced all of their rights and interest in said property to the said Russ; that immediately after the said sheriff's sale the said Mrs. Greening and her heirs had construed the same as a divestiture of all their interest in said property, had abandoned it and paid no further taxes thereon, and that they are now estopped from disputing defendant's title. Defendant admitted that he had leased the mineral rights to the Producers' Oil Company, but averred that the said lease was valid in all respects.

Brinkerhoff's prayer was that plaintiffs' demands be rejected.

The Producers' Oil Company adopted all of the averments of Brinkerhoff's answer, alleged its own good faith, and likewise prayed that plaintiffs' demands be rejected.

Certain other persons appeared as interveners in the court below, but both they and the Producers' Oil Company, we are informed by the briefs on both sides, have been eliminated from this appeal.

There was judgment in favor of M. K. Nilson and S. L. Carroll, plaintiffs, recognizing them as the owners of the property and entitled to immediate possession, ordering the lease to the Producers' Oil Company canceled, and reserving plaintiffs' right to sue for all oil and gas extracted from the property, as well as for all other damages.

The case is before us on the appeal of Brinkerhoff alone.

### Statement of Case.

J. J. Greening died, leaving a widow and several children, and owning certain real property situated in the parish of Red River. One of his major heirs, J. R. Greening, was appointed administrator of his estate, and after proper proceedings sold the said property to the widow and mother, Mrs. Sarah A. Greening. Thereafter Mrs. Greening and her children mortgaged the property to one S. Russ. Failing to pay the indebtedness, the said S. Russ proceeded via ordinaria against the mortgagors, and obtained a judgment recognizing his rights and ordering the property sold to pay his said debt. The writ of fi. fa. directed the seizure and sale of the mortgaged property as "described in annexed copies of mortgages," but these

particular copies do not appear to be in the record. The sheriff's return stated that he had seized the property and described it by governmental subdivisions, mentioning that in section 31 as "W. ½ of E. ½ of N. W. ¼ of sec. 31, T. 13, R. 10." This, of course, does not include the west half of northwest quarter of said section. The same description which appeared in the return was given in the advertisement and repeated in the procès verbal and act of sale. This deed was passed September 27, 1887, and recorded on the 29th of the same month. Russ went into possession of the property, and somewhere between 6 and 20 acres of this particular 80 appears from the record to have been in cultivation during at least a portion of the time subsequently; but, as indicated above, it had not been described or included in the sheriff's advertisement, procès verbal or deed.

During 1915 M. K. Nilson bought under various deeds and for different sums the interests of the heirs of Mrs. Sarah A. Greening (she having died in the meantime) in said 80 acres of land. About that time considerable activity looking to the discovery of oil and gas in that part of the country, was in progress, and Nilson, finding this property apparently still standing in the name of the heirs of Mrs. Greening on the records of Red River parish, hunted them up, and, as stated, bought their interests. He admits that he paid less therefor than he would have if he had not known that there was some "hitch" in the title with Brinkerhoff, who had bought all of the balance of the Greening property which was included in the Russ mortgage from Russ. However, he denies that he knew what the exact trouble was, and claims that he only purchased after having had the title approved by an attorney at law. On this point the trial court, who saw and heard the witnesses testify, concluded that he was telling the truth. However, it does not appear to us as reasonable that an experienced real estate dealer, of the intelligence which Nilson's testimony shows him to have been, would have, in the first place, discovered the status of this 80 acres as it then existed, and, having done so, would not have found that the property had been mortgaged to Russ but not sold under the foreclosure. It is, of course, entirely possible and most probable that Nilson did not know the legal effect in this situation, and was, as he says, doubtless guided by the opinion of his counsel.

Defendant Brinkerhoff had already leased the property to the Producers' Oil Company, and after purchasing Nilson also leased to one Weis. But Weis has also been eliminated from the appeal, we are informed, under some agreement, we assume, by which the mineral rights were disposed of, and perhaps leaving for determination as between the present litigants only the question of ownership, and, as a consequence, the royalties arising under the leases.

### Opinion.

[1] Nilson and Carroll are plaintiffs in a petitory action, and must, of course, stand upon their own title. This is the only question that can be determined in this case, because not only are the necessary parties to an action to reform the proceedings and deed by which Russ acquired not before the court, but Brinkerhoff has not prayed for that relief.

Plaintiffs and defendants trace their respective titles (that is, whatever rights defendant may have) to a common author, Mrs. S. A. Greening. It is true that certain renunciations appear in the record by the heirs of J. J. Greening to their rights in his succession, but it must be remembered that all of this property, including the 80 in dispute, was sold to Mrs. S. A. Greening at the succession sale of her husband, J. J. Greening, and she was still living when those renunciations were given.

Thirty years had not run, in 1915, when this suit was filed, since the sale under the foreclosure of Russ in 1887, and at which he purchased so as to give defendant title by possession, under the theory that possession of a part would give title to the whole; and the 80 acres in contest not having been included in the description of that deed, the title was not perfected by the prescription of 10 years. However, it is argued by the defendant that inasmuch as the property which was mortgaged was known as the "Last Chance" or "Greening plantation," of which this 80 was a part, it was not necessary that each subdivision be specifically described in the deed. Plaintiffs' reply is that it was not so mentioned in the judgment, writ, return, procès verbal, or deed, but was described entirely by governmental subdivisions.

[2] The property undoubtedly stood on the record in the name of Mrs. S. A. Greening at the date of her death, at which time the legal title fell to her heirs. It was from these that the plaintiffs purchased. Did the knowledge which plaintiffs had of the facts above mentioned invalidate their title? It may be that their claims are inequitable, but they are standing, not upon the equities, but upon the cold letter of the law and a recorded title. Its strength can only be shaken by fraud or bad faith toward the defendant or his privies, and no such condition is disclosed by this record. Haas v. Fontenot, 132 La. 812, 61 South. 831; Bender v. Chew, 129 La. 849, 56 South. 1023; Adams v. Drews, 110 La. 456, 34 South. 602. The knowledge which plaintiffs had could not take the place of a recorded title in defendant. They were required to look only to the record. McDuffie v. Walker, 125 La. 152, 51 South. 100.

It is not disputed that plaintiffs' title back of Mrs. S. A. Greening and her husband was good, but, in fact, defendant claims as heretofore indicated, from the same source.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.