LAND, Justice.
 

 Plaintiffs, M. J. Derryberry and James A. Hunter, alleging themselves to be the owners and in the actual physical possession of the NE % of NW % of Section 14, Township 23 North, Range 16 West, less 16 acres off the East side thereof, in Caddo Parish, Louisiana, pray to be recognized as the owners of the entire fee title, and for the cancellation of a certain deed from Charles H. Clark, trustee of the bankrupt estate of Garland Latta, to Curtiss D. Matterson, of the undivided one-half interest of the bankrupt in this property and also the deed for the same interest from Curtiss D. Matterson to Harold E. Curran.
 

 The plaintiffs and the defendant, Curran, claim under a common author.
 

 It is conceded and proved that Mrs. Jessie G. Latta was the owner of the land; that her title ran back to a patent from the United States; that she died leaving as her sole and only heirs, Garland Latta and Nancy Latta Shireman, who were recognized as such and sent into possession of her property, including the 24 acres in controversy, by a judgment in 1926. Tr. 116.
 

 The records of Caddo Parish disclosing an apparently perfect title in Garland Latta and Mrs. Nancy Latta Shireman to the property in question, James A. Hunter acquired, on October 15, 1934, from these two parties the fee simple title to the property by deed which was recorded on October 17, 1934. Tr. 118.
 

 On October 31, 1934, Hunter conveyed to Derryberry an undivided one-half interest in all of his (Hunter’s) right, title and interest in the land. Tr. 122.
 

 Garland Latta was adjudicated a bankrupt in the Northern District of New York
 
 *727
 
 on April 28, 1930, and Charles H. Clark of Franklin County, New York, was appointed and qualified as trustee of his estate.
 

 However, at the time James A. Hunter acquired this property, and at the time he conveyed an undivided one-half interest in same to Derryberry, both were in legal and actual good faith, as there was nothing whatever of record in the Parish of Caddo showing that Garland Latta had ever been adjudicated a bankrupt, or that he had gone into bankruptcy, and plaintiffs admittedly had no knowledge of any bankruptcy proceedings whatever by or against Latta.
 

 Oil was discovered in the Rodessa Field in July, 1935. Tr. 199.
 

 On September 17, 1935, plaintiffs entered into a drilling contract and agreement with the G. H. Vaughn Production Company under which two producing wells were drilled. Tr. 127 et seq.
 

 On January 18, 1937, there was placed of record a quitclaim deed from Charles H. Clark of Franklin County, New York, trustee in bankruptcy of Garland Latta, bankrupt, to Curtiss D. Matterson of the same State, purporting to convey for a consideration .of $10 all the right, title and interest of Latta in this property and other lands, without any warranty or representations as to the title, and without recourse on the grantors. Tr. 16. This deed bears date of October 26, 1936.
 

 By deed dated January 22, 1937, and recorded February 5, 1937, Matterson purported to convey to the defendant, Harold E. Curran, without warranty, and for the price of $10 and other considerations (not named in the deed), the undivided one-half interest in question. Tr. 20.
 

 On February 24, 1938, there was recorded a certified copy of Latta’s adjudication in bankruptcy (Tr. 159-161), and on the same day there was recorded a certified copy of the order approving the trust'ee’s bond. Tr. 162-164.
 

 The ultimate issue in the case is whether or not a bankruptcy proceeding in the State of New York is binding upon innocent third persons who bought upon the faith of the public records of Caddo Parish, where the land is situated, without any notice at the time from these records, or otherwise, of the bankruptcy proceeding.
 

 Plaintiffs sued to cancel the deeds to Matterson and Curran above mentioned as clouds .on their title and to enjoin them from asserting any claim to the property. Judgment was also sought against the Standard Oil Company of Louisiana for the value of oil run from the land by that Company and withheld on account of the filing of said deeds. Tr. 9-15.
 

 The Company filed an answer and included in it an interpleader proceeding under Act 123 of 1922, and' deposited in the régistry of the court the sum of $4,331.-75, which was accepted by plaintiffs as being the correct sum due.
 

 Later on, the Company impleaded Knighton and others who had filed suit against plaintiffs claiming an interest in the land. Tr. 23-33 and 45-47. Plaintiffs answered the interpleader proceeding, as well as the amendment thereof -(Tr. 35-43
 
 *729
 
 and Tr. 54 et seq.), wherein they set up title to the property under an unbroken chain extending back to a patent issued from the United States. The controversy between plaintiffs and the Knightons was fully settled as shown by the acts of compromise and judgments. Tr. 138-150.
 

 Matterson made no appearance at all in the case, and Curran did not appear until after taking a preliminary default by plaintiffs, Tr. 2, when he filed an exception of no cause or right of action. Tr. 44.
 

 This exception having been overruled, Curran filed an answer, Tr. 48-53, wherein, inter alia, he set up title in himself, affirmatively, and prayed to be recognized as owner of an undivided one-half interest in the land, to be placed in possession of such interest, and for an accounting.
 

 After trial on the merits, Curran filed a plea to the jurisdiction of the court, taking the position that the United States District Court for the Northern District of New York had exclusive jurisdiction, and that the First Judicial District Court for the Parish of Caddo, Louisiana, was without jurisdiction ratione materias. Tr. 57. The plea to the jurisdiction of the court was overruled by the district judge, who handed down a written opinion, Tr. 164%, sustaining the contentions of the plaintiffs as against Matterson and Curran, recognizing plaintiffs as the owners of the property, ordering the cancellation of the deeds complained of, and the payment to plaintiffs of the funds deposited in the registry of the court by the Standard Oil Company of Louisiana. This opinion was followed by an appropriate judgment in favor of plaintiffs. Tr. 165.
 

 (1) In his brief defendant, Curran, does not mention or discuss the exception of no cause or right of action, or the plea to the jurisdiction of the District Court of Caddo Parish, Louisiana. Apparently, defendant has acquiesced in the overruling of these pleas by the trial judge.
 

 However, as to the plea to the jurisdiction ratione materise of the lower court, the fact is that the property here involved has passed out of the possession of the bankrupt court by deed of the trustee to Curtiss D. Matterson dated October 26, 1936. Hence from that date the bankruptcy court has been out of possession and its exclusive jurisdiction to protect its possession has ceased to exist.
 

 In the instant case, defendant has no greater right than that of the trustee in bankruptcy. Had the trustee sought to recover the property sold by the • bankrupt to these plaintiffs, the District Court of Caddo Parish, Louisiana, would have had jurisdiction to try the case. The defendant here has converted this suit, originally an action in jactitation, possessory in character, into a petitory action and is seeking to recover the property for himself ; therefore, the, District Court would have jurisdiction of the subject-matter. The plea to the jurisdiction ratione materke was properly overruled by the trial judge.
 

 (2) As to the question whether one who buys property from a bankrupt, without notice of such bankruptcy, can rely upon the public records for a good title to the property.
 

 
 *731
 
 This question is answered in the affirmative not,only by Article 2266 of the Revised Civil Code but by a long and unbroken line of decisions of this Court.
 

 Article 2265 of the Civil Code requires all sales of immovable property or other contracts affecting the same, and all final judgments affecting immovable property to be recorded in the parish where the immovable property is situated.
 

 Article 2266 of the Civil Code provides that: “All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
 

 “The recording shall have effect from the time the act is deposited in the proper office, and indorsed by the proper officer.”
 

 In McDuffie v. Walker, 125 La. 152, 51 So. 100, the Supreme Court settled for all time in Louisiana the question whether notice is equivalent to registry and held that it was not equivalent to registry. That decision has been uniformly followed.
 

 In Loranger v. Citizens’ Nat. Bank of Hammond, 162 La. 1054, at page 1058, 111 So. 418, at page 420, the court said: “The conveyance records are the only things to which one dealing with real estate or any real right ever needs to -look, under repeated decisions of this court. Baird v. Atlas Oil Co., 146 La. [1091], 1099, 84 So. 366.”
 

 In Dalbey v. Continental Supply Co., 165 La. 636, at pages 640, 641, 115 So. 807, at page 808, it is also said: “It is no longer an open question in this state that conveyance records are the only things to which one dealing with real estate or real rights ever needs to look, and that notice or knowledge .dehors the public records on the part of a third person is not equivalent to registry.”
 

 “It is the settled jurisprudence of this state that third persons dealing with immovable property need only look to the public records, since notice or knowledge dehors the record is not equivalent to registry.” Coyle v. Allen, 168 La. 504-509, 122 So. 596, 598, citing, inter alia, McDuffie v. Walker, 125 La. 152, 51 So. 100.
 

 In State v. Recorder of Mortgages, 175 La. 94, at pages 100 and 101, 143 So. 15, at page 17, it is said: “We have cited these few cases out of the very large number holding to the same' effect, because these cases show that in this state registry is not a mere matter of notice alone,
 
 but a matter of public policy upon a ‘most important property right’;
 
 and that considerations of equity cannot prevail" against it. ‘With us, those laws (of registry) are considered as founded
 
 on public policy,
 
 and the want of registry cannot be supplied. In the other States they are viewed differently, and notice in any form is held to be equivalent to registry.’ Lockett v. Toby, 10 La.Ann. 713, 715.
 

 * * * * * * ‡
 

 “But, as we have endeavored to show, registry is
 
 a matter of public policy in this state,
 
 against which considerations of equity cannot prevail; and ‘there can be no actual owner of immovable property, so far
 
 *733
 
 as third persons are concerned, other than the owner of record.’ ” (Italics ours.)
 

 See also Bell v. Canal Bank & Trust Co., reaffirming these principles, 193 La. 142, 190 So. 359.
 

 Under the Bankruptcy Law registration of the decree of adjudication and order approving the trustee’s bond must be recorded in the county in which the real estate is situated in order to impart notice or affect the title of a bona fide purchaser.
 

 Sub. c of Section 75 of the Bankruptcy Law as it existed from the date of Latta’s adjudication in bankruptcy until the passage of the Chandler Act of June 22, 1938, U.S.C.A. Title 11, § 75, page 180, provided: “The trustee shall, within thirty days after the adjudication, file a certified copy of the decree of adjudication in the office where conveyances of real estate are recorded in every county where the bankrupt owns real estate not exempt from execution, and pay the fee for such filing, and he shall receive a compensation of 50 cents for each copy so filed, which, together with the filing fee, shall be paid out of the estate of the bankrupt as a part of the cost and disbursements of the proceedings.”
 

 Sub. e of Section 44, Title 11, United States Code Annotated, page 280, provides: “A certified copy of the order approving the bond of a trustee shall constitute conclusive evidence of the vesting in him of the title to the property of the bankrupt, and if recorded shall impart the same notice that a deed from the bankrupt to the trustee if recorded would have imparted had not bankruptcy proceedings intervened.”
 

 In Southern Dairies v. Banks, 92 F.2d 282, the Circuit Court of Appeals of the Fourth Circuit considered the meaning and effect of sub. c of Section 75, supra, and in the body of the opinion, page 287, said, inter alia: “The purpose of this requirement is obviously to show upon the records the fact that the bankrupt has been divested of title to his property by operation of law and that same has been vested in his trustee in bankruptcy.”
 

 We quote the following from Collier on Bankruptcy, Third Edition: “Section 47, VII. Trustee To Record Certified Copy of Adjudication. Paragraph 965:
 

 “In general. The subsection was added in 1903. Section 21-e seems to have been overlooked. There can be no doubt, however, as to the meaning of the new subsection. The Trustee is bound within the time limited, to file, which doubtless means also to record, in all counties where the bankrupt has real estate, a certified copy of the decree of adjudication. It is unfortunate that this filing is not in words given the effect of actual notice. Thus the recording of the certified copy of the order approving the trustee’s bond is still essential.
 

 “Where neither certified copy of order approving bond or decree of adjudication is filed, a purchaser of real estate, depending on public records, will be protected even though title passes to trustee by operation of law.”
 

 And from Remington on Bankruptcy, Volume 2, Third Edition, Pocket Supplement, Section 1141: “It has been held in
 
 *735
 
 some cases that the statutory provision to this effect-is directory only and does not interfere with the passing of the title to the trustee by operation of law; but in other cases, and by what the author considers the better reasoning, it has been held that an innocent purchaser will be protected where such filing for record was never made or where the purchaser acquired his interest after the expiration of the thirty day period though before the certificate was filed.”
 

 We will now consider the interpretations by State Courts óf the foregoing provisions of the Bankruptcy Law.
 

 In Beach v. Faust, 2 Cal.2d 290, 40 P.2d 822, 823, the trial court gave judgment for plaintiff upon -the theory that the bankruptcy proceeding was ■ constructive notice per se to all intending purchasers that Marks had been declared a bankrupt. In reversing the decision of the District Court, the Supreme Court of California said:
 

 “The adjudication of Marks in the bankruptcy c'ourt was not of itself notice per se, and the trustee was required within thirty .days after the adjudication to file a certified copiy of the decree of adjudication in the office where conveyances of real estate are recorded in every county where the bankrupt owned real estate not exempt from execution. U.S.Code, title 11, § 75, subd. (c), 11 U.S.C.A. § 75(c). It is not here claimed the property was exempt.
 

 “For the foregoing reason, we are of the view that the appellant Faust, defendant in the court below, was a bona fide purchaser of the property in controversy, and was protected by the recording laws.”
 

 In Vombrack v. Wavra, 331 Ill. 508, 163 N.E. 340, 342, the Supreme Court of Illinois had occasion to pass upon the question here involved. In that case, Goldberg, the owner of a lot of ground in Madison County, which was subject to an incumbrance in favor of a building and loan association, was adjudicated a bankrupt in the Northern District, Western Division of Illinois. During the pendency of the bankrupt proceeding, Wavra purchased the lot from Goldberg and his wife. No instrument of any character relating to the proceeding in bankruptcy had been recorded in Madison County at the time of the conveyance to Wavra and the grantors appeared of record as the owners of the property. Wavra had no notice of the bankruptcy proceeding. The trustee in bankruptcy sold the property to Vombrack.
 

 The Illinois statute provided that deeds or other instruments should take effect and be in force from and after filing the same for record, and not before, as to all creditors and subsequent purchasers without notice. It further provided that such deeds and title papers should be adjudged void as to all such creditors and subsequent purchasers without notice until the same shall be filed for record.
 

 The Court after referring to 11 U.S.C.A. § 44, which relates to the recording of a certified copy of the order approving the bond of the trustee and to Section 75, 11 U. S.C.A. providing for the recording of a certified copy of the decree of adjudication, said: “Rules concerning a transfer of property are primarily a matter of state regulation. Etheridge v. Sperry, 139 U.S.
 
 *737
 
 266, 11 S.Ct. 565, 35 L.Ed. 171. In the absence of specific or particular provisions of the Bankruptcy Act [11 U.S.C.A.], the law of the state determines the efficiency of acts and transactions to effect the transfer of the title to property, the time of the passing of the title, and whether the record-, ing or filing of an instrument is required, and, if so, as to whom it will be void for the failure to record it.”
 

 The court also cited Patterson v. De la Ronde, 8-Wall. 292, 19 L.Ed. 415, to the effect that the object of all registry laws is to impart information to parties dealing with property and to protect them from prior secret conveyances and liens.
 

 The Supreme Court of Illinois pointed out in its opinion that the Bankruptcy Act did not contain any provision superseding, modifying, or limiting the State law relative to conveyances and that the Bankruptcy Law itself required the recording of a certified copy of the order approving the bond of the trustee and likewise required the filing of a certified copy of the decree of adjudication in every county where the bankrupt owned real property.
 

 Proceeding it was said: “While the trustee’s title to the bankrupt’s property vests by operation of law, and does not depend upon the filing or recording of these certified copies, yet it is manifest that these provisions of the Bankruptcy Act require a disclosure of the vesting of the title to a bankrupt’s real property in the trustee in bankruptcy by the public records of the county in which the property is situated, and afford protection to -persons who in good faith rely upon those records in the acquisition of the property or of some interest in it.”
 

 Nothing whatever was ' filed of record in Caddo Parish or in the State of Louisiana relating to Latta’s bankruptcy until February 24, 1938, some eight years after Latta’s adjudication in bankruptcy, and between three and four years after the acquisition of the property in dispute by James Hunter from Garland Latta, and since it is conceded that both Hunter and Derryberry were without actual knowledge of the bankruptcy, it is clear that plaintiffs’ title to the property is not affected by Latta’s bankruptcy.
 

 Judgment affirmed.
 

 PONDER, J., absent.